So our next case for argument, United States v. Orlando, Mr. Hillis again. May it please the Court, my name is Daniel Hillis, I'm with the Federal Public Defender's Office, and I represent Mr. Orlando on this appeal. He asserts three errors. The first two are matters that have been conceded by the government, and those are whether or not the district court should have held a full resentencing hearing rather than a limited resentencing hearing, and whether the district court failed to consider post-incarceration rehabilitation. Since the government has conceded both of those, I'll move on to the third issue unless the Court has questions on those two issues. I have a question. Does Mr. Orlando understand that if we remand, as he has asked, things can get worse? As things stand, he has a 40-year term of imprisonment and no supervised release. Yes. However, if he is to have a remand and the district court would be persuaded to accept the government's thoughtful recommendation for 35 years, he would trade the opportunity to go back and be resentenced and get... is because the district judge may want to increase the length of the imprisonment in order to make up for lax terms of supervised release, lower duration or lax returns. So one thing that can happen on remand is that your client will end up with 42 years and supervised release and be worse off. Does your client understand that can happen? Yes. We discussed those possibilities with all of our clients. And it was his decision to file the appeal and proceed in this fashion. He's aware of the risks, Your Honor, but there's also much to be gained here if the case... I believe they have a treatment program in the Bureau of Prisons for that, Your Honor. And it wouldn't be limited just to that. It's whatever evidence of post-incarceration rehabilitation that he could present by way of a disciplinary... Look, he's entitled to do that. That's what a full resentencing means. Yes. I just want to make sure that he really understands that things can get worse as well as better. Yes. As a full resentencing, which he sought and which was part of the joint motion, he understands that the court would always have the authority to impose whatever sentence it could have at the original sentencing. So he's well aware of that. And if I may then proceed to the issue of the breach, because I believe that is very clear here. Record 21, paragraph 22, specifies that the government was required to recommend a term of incarceration of 35 years. The government's brief at page 15 specifically acknowledges that it did not do that, yet it contends there was no breach of the plea agreement. And frankly, I don't understand how that can validly be asserted that it wasn't a breach when there's the acknowledgement that the recommendation that was required by the plea agreement was not made. So I believe that for purposes of plain air, which is the governing standard of review, there is breach and there is a specific, clear violation of the requirements of the plea agreement. Was there a response? Did they make a recommendation as to the number of years? No, not at the resentencing hearing. So that was my question. They didn't dispute the 35, but they didn't say anything. Right, and they had an affirmative obligation under the terms of the plea agreement. Paragraph 22 required them to recommend a 35-year sentence. So under this court's jurisprudence, the appropriate remedy, provided that prejudice has been established, and I rely on my brief... Did anybody suggest to the district judge that was in there? In other words, your honor, we believe the plea agreement also required the government to recommend 35 years? No, it was not stated. Nobody brought it to the court's attention. Save you a trip to Chicago. It would have been wonderful, right, but it wasn't done, and so here we are. And it provides Mr. Orlando with the opportunity to go back in a full resentencing, and hopefully with a different judge who would be now persuaded to have a recommendation by the U.S. Attorney's Office, and their recommendations, they carry clout. So why do you say by a different judge? Because I think under specific performance, the law requires that not only is there a requirement that the government goes back in front of the court and make the recommendation, but it gets assigned to a different judge. What decision of this circuit do you think supports that? I believe it was Diaz-Jimenez. I don't understand. Usually the resentencing is by the same judge. Yes, but not in specific performance. The problem was there was no recommendation made to him, and it's pretty hard to fault him for coming up with his own. It's not a fault of the district court. It's elapsed by the government. And it was inadvertent, but even under Santabello, inadvertent breaches of plea agreements still trigger the right that we're seeking here. Not statutorily, though. No, but if the decision were to be otherwise, it would be in conflict with Santabello, not to mention this court's own precedent. This is a little odd where we've got a plea agreement that specifically sets it out. It's before everybody, and you end up with a different sentence that nobody said anything about at the time it was given out. I don't think it's much different than the context of Santabello. In Santabello, the prosecutor went in and wasn't aware of what the plea agreement required and made a sentencing recommendation that was contrary to what was required. It was an affirmative recommendation, though. Here there wasn't anything. Yes. And the plea agreement specifically required a recommendation. So by saying nothing, there's a breach. And it's a serious one, and it was under plain error. I still don't understand why it should go back to a different judge. Conceptually, as I understand it, it is because the judge, now having had the parties before him, would have been influenced by what had happened before. The likelihood of the outcome that's necessary for it to really be affected is to have a fresh set of ears. In any event, Diaz-Jimenez required that it was not only a different judge, but it was a different prosecutor who would go before the new judge and make the recommendation in honoring the plea agreement as the terms required. We're being pushed further and further for us to make the sentence right. I beg your pardon? Oh, no, sir. No. Well, that's what it amounts to, because it's 35 years in the plea agreement. We know what it's going to be when it goes back. He's not going to go contrary to the, I would think, go contrary to the agreement. I don't know why the judge went contrary in the first place. The government doesn't always ask for light sentences, and 35 years isn't light. It was thoughtful and considerate of them, with the seriousness of the offense, to recommend in the plea agreement what they chose to agree to. And they should go in and recommend 35 years and do it forcefully. Otherwise, they should never have struck the plea agreement they did. Unless the court has questions of me. How old was he when he started serving his sentence? He was in his early 30s. Okay. Well, thank you very much, Mr. Hellis. Thank you. Mr. Koenig? Good morning. May it please the Court. My name is Jonathan Koenig. I appear on behalf of the United States this morning. A lot of things, in Judge Kaney's words, probably could have saved us a trip to Chicago today, and the government certainly bears some responsibility, in my view, for not nudging Judge Randa in the direction of a full resentencing. We could go on a detour about why the government didn't do that. I'm not sure how fruitful it would be. The fact that it was not a full resentencing, though, is very consequential. The term of imprisonment was not on the table at Mr. Orlando's resentencing. For that reason, there couldn't be a breach, much less a breach that survives plain error of review, one that affected Mr. Orlando's substantial rights and seriously calls into question the integrity and fairness of judicial proceedings. So we would request simply that this be remanded to Judge Randa. There was no breach, and therefore no reason to reassign it to a different judge when it goes back yet again. I'm happy to answer any questions that you may have, certainly. Remand with directions? Perhaps, Your Honor. I think it would behoove the prosecutor who handles the next appearance to go before the judge with a checklist of things that need to be accomplished so we don't come back to Chicago a third time. Well, certainly, if the shoe had been on any other foot, in other words, if this had been something that the defendant failed to do, we'd be all over you for not having raised it to the district judge. Well, but the consequence of not bringing this up really falls more heavily on Mr. Orlando. That's what I said, if it were different. But all I'm saying is that these were things that both sides knew. A simple comment to the district judge would have indicated he could have said, well, I'm not sentencing him to that. I'm going to give him what I gave him, which would have been unlikely, I would think. In fairness, I think, first of all, the judge was very forceful. Almost the first words out of his mouth were, I interpret the remand order this way. It's going to be very narrow. I understand. There was a little bit of confusion in the case law, although certainly it was trending in the direction that these different components of the sentence are part of a package and need to be considered together. So if it goes back again, obviously, first of all, it has to be a full resentencing. Well, the judge could reject the sentencing agreement to begin with, right? I'm sorry, Leonard? The judge could have rejected this plea agreement. Well, in fact, he did in the original sentencing. We recommended 35, and he gave a sentence of 40 years. But this time he came back again with 30. Well, we'd still be bound by the plea agreement, so that would be one thing. There would be the post-incarceration rehabilitation. There would be avoiding the errors that happened at the first sentencing hearing. And then I think there are some questions that aren't really raised in this appeal, but they have to do with whether you have to impose a term. I think probably in a case like this it was mandatory, and whether you have to impose conditions or whether they can be delayed. Again, those aren't squarely presented in this appeal, but those are things that the government will want to think about carefully when we go into the next sentence, whether it's in front of Judge Randa or some other judge. Is that one of the issues in this case? Am I confusing with another case about delayed imposition or delayed choice of post-incarceration? Well, Your Honor, what the judge did was he didn't impose a term of supervised release or conditions of any kind and indicated there will be supervised release. We'll address the conditions shortly after your release. This is blatantly illegal. It has no effect. And I'd rather trust that this won't happen again on remand. Yes, sir. That's exactly what I was alluding to. First of all, for starters, there would be a five-year mandatory minimum term of supervised release that would, in my view, have to be imposed. It's actually something of a puzzle that the United States has not fought an appeal in this case. Supervised release is mandatory. It was not imposed by the district court. There's a legal error. But, of course, you have an appeal. And this is one of the reasons why I was asking Mr. Hillis if Mr. Orlando knows what he's getting in for because on remand the district court will be required to impose supervised release. As things stand, there's no term of supervised release. Maybe an illegal sentence, but in the absence of an appeal by the U.S., there is just no term. We heard Mr. Hillis' answer. Mr. Orlando is taking his risks. It's an excellent point, Your Honor. I guess in light of our concession, we didn't think it was necessary to raise that affirmatively as an issue. But you're right. You're absolutely correct. Okay. Well, thank you very much. Thank you, Your Honor. Mr. Hillis, do you have anything further? Yes. The government filed with Mr. Orlando a joint motion for resentencing per Thompson. There's no mistake about what it did. And there's no mistake about what Thompson required, full resentencing hearings. I heard a member of this court once refer to Thompson going off like a bomb across the Seventh Circuit, full resentencings. So there could be no doubt that the parties certainly knew that there was a full resentencing. Furthermore, if the judge read Thompson, as I assume that he did, he knew that it was a full resentencing. So there could have been no mistake. And even if it was, it comes back to sort of inadvertence, which Santabello contemplates and rejects as grounds to do nothing. Relief is still appropriate under Santabello. A full resentencing was required under Thompson. And, yes, my client would willingly trade five years of incarceration for five years of supervised release that would be statutorily required and live under the necessary conditions of supervision. Okay. Well, thank you very much again, Mr. Hillis.